IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JAMES ALLEN HENNIS, sui juris, and
SANDRA KAREN HENNIS, sui juris                                      PLAINTIFFS
                                                                        pro se

vs.                                              CIVIL ACTION NO: 2:10CV20-KS-MTP

TRUSTMARK BANK, ET AL.                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the following Motions to Dismiss filed by the Defendants:

1) Motion to Dismiss on Behalf of US Bank, NA, and U.S. Bankcorp Manifest Funding Services [Doc. # 6] (February 9, 2010) and memorandum in support. [Doc. # 7]. The motion is opposed by Plaintiffs James and Sandra Hennis. [Docs. ## 17 & 36].

2) Defendant HSBC Bank Nevada, N.A.'s Motion to Dismiss [Doc. # 38] (March 3, 2010) and memorandum in support [Doc. # 39]. This motion is opposed by Plaintiffs James and Sandra Hennis. [Doc. # 56].

3) GE Money Bank's 12(b)(6) Motion to Dismiss [Doc. # 42] (March 8, 2010) and memorandum in support [Doc. # 43]. The motion is unopposed by Plaintiffs.[1]

---

[1] Although the Plaintiffs did not file responses to this motion or the motions following, the Plaintiffs did file "Affidavits of Conditional Acceptance and Request for Proof" for seven Defendants. The Defendants' Motion to Strike these documents was granted because they were "an inappropriate attempt by Plaintiffs to obtain unauthorized discovery." Order [Doc. # 107]. In Plaintiffs' Motion for Reconsideration of the Order, the Plaintiffs' characterize the stricken "Affidavits of Conditional Acceptance" not as attempts to request discovery, but rather as "answer[s] to all the DEFENDANTS instant motions and an offer of settlement." [Doc. # 117]. Regardless of how the Plaintiffs designate the documents, they each demand answers to approximately 20 questions "accompanied by all evidence, documentation and your sworn oath

1

4) Belk's 12(b)(6) Motion to Dismiss [Doc. # 44] (March 9, 2010) and memorandum in support [Doc. # 45]. The motion is unopposed by Plaintiffs.

5) Motion to Dismiss Plaintiffs' Complaint or in the Alternative, Transfer the Action to the State of Utah, and incorporated Memorandum of Law filed by Advanta Bank Corp. [Doc. # 49] (March 10, 2010).

6) Advanced Call Center Technologies, LLC's Motion to Dismiss [Doc. # 51] (March 10, 2010) and memorandum in support [Doc. # 52]. The motion is unopposed by Plaintiffs.

7) Regions Bank's Motion to Dismiss [Doc. # 57] (March 11, 2010) and memorandum in support [Doc. # 58]. The motion is unopposed by Plaintiffs.

8) Motion to Dismiss filed by BMW Financial Services NA, BMW Bank of North America, BMW Card Services, a/k/a BMW Bank of North America, and Financial Services Remarketing, Inc. (collectively "BMW") [Doc. # 68] (March 15, 2010) and memorandum in support [Doc. # 69]. The motion is unopposed by Plaintiffs.

9) Motion to Dismiss filed by Discover Bank and DFS Services LLC, incorrectly sued as Discover Card Services [Doc. # 70] (March 15, 2010) and memorandum in support [Doc. # 71]. The motion is unopposed by Plaintiffs.

For reasons to follow, the motions to dismiss are well taken and should be **granted** as to all Defendants and all claims except the failure to validate debt claim against Advanced Call Center.

---

or affidavit" and are not at all responsive to the arguments raised in the Defendants' Motions to Dismiss that the Plaintiffs have failed to state a claim for which there is relief under the law.

## I. FACTS

While Plaintiffs' pleadings are light on facts, the Court construes the *pro se* complaint liberally and takes the facts in the light most favorable to the Hennises. This case appears to involve several debt instruments between the Hennises and several of their lenders, including promissory notes secured by real property, business credit cards, and car loans. Plaintiffs seek closure of all accounts, release of all liens on their property, and the arrest and prosecution of all agents involved in the matter for their violations of federal law. Compl. 3 [Doc. # 1]. They claim that the contracts were unlawful because:

(1) Defendants did not provide valuable consideration;

(2) Defendants required Plaintiffs to unlawfully disclose their social security numbers under 42 U.S.C.A. § 408(a)(8);

(3) Defendants have not provided validation of debt as required under 15 U.S.C. § 1692g; and

(4) Plaintiffs reserved all rights under the UCC § 1-308.

Compl. 6-7. Further, Plaintiffs allege that in November of 2009 they sent a bill of exchange to each of their creditors "to be tendered by them for the discharge and closure of the alleged accounts and release of liens." Compl. 7. Because all of Defendants refused the bills of exchange by written letters and ignored the Notice and Demand letters, Plaintiffs claim that the debts are discharged under UCC § 3-603. Compl. 8. Finally, Plaintiffs allege that "defendants have essentially ignored all of our correspondence and continue to harass, threaten and intimidate Plaintiffs by means of multiple and unrelenting phone calls by Defendants and/or their agents" including third party collection agencies. Compl. 9.

## II. STANDARD OF REVIEW

All of the above listed Defendants have moved this Court to dismiss this matter under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. FED. R. OF CIV. P. 12(b)(6). The Rule 12(b)(6) motion's purpose is "to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 3d § 1356 (2004). As the Fifth Circuit has stated, "We may not go outside the pleadings. We accept all well pleaded facts as true and view them in the light most favorable to the plaintiff. We cannot uphold the dismissal 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Colle v. Brazos County, Texas*, 981 F.2d 237, 243 (5th Cir. 1993); (internal footnotes and citations omitted). *See also, Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).

The United States Supreme Court has recently clarified the plaintiff's initial pleading burden under Rule 8(a) to sufficiently state a claim and survive a Rule 12(b)(6) motion. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* The Court further stated:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation

4

of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

*Id.*

While the Local Rules require the opposing party to file a response to a motion or notify the Court of its intent not to respond, L.U. Civ. R. 7(b)(3)(A), the Fifth Circuit has cautioned that "[it has] not 'approved the automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation.'" *Johnson v. Pettiford,* 442 F.3d 917, 918 (5th Cir. 2006).

### III. APPLICATION

### A. The Validity of the Contracts

### 1. Sufficiency of Consideration

While Plaintiffs do not deny that they received loans, credit, and/or vehicles through these various contracts, the central premise in Plaintiffs' claim is that they received Federal Reserve notes, which are not "valuable consideration" because they are not redeemable in gold or silver, are valueless, and are not U.S. currency as they are not printed or minted by the United States, but instead "are created and printed by the Federal Reserve Bank and fail to meet the guidelines as outlined in the Constitution for lawful money." *See* Compl. 6, ¶ I; Pls.' Obj. to Reply in Supp. Mot. to Dismiss 2 [Doc. # 36].   As a result, Plaintiffs contend that the contracts are unenforceable due to the lack of consideration.

This argument is completely unfounded and frivolous under decades of precedent and law.  *See* 31 U.S.C. § 5103 ("United States coins and currency (including Federal reserve notes and circulating notes of Federal reserve banks and national banks) are legal tender for all debts,

5

public charges, taxes, and dues."); *Foret v. Wilson,* 725 F.2d 254, 254-55 (5th Cir. 1984) (per curium) (argument "that only gold and silver coin may be constituted legal tender by the United States, is hopeless and frivolous, having been rejected finally by the United States Supreme Court one hundred years ago" (citing *Julliard v. Greenman ("The Legal Tender Cases")*, 110 U.S. 421 (1884)); *U.S. v. Benson*, 592 F.2d 257 (5th Cir. 1979) ("Federal Reserve Notes are the common medium of exchange in all fiscal affairs of the nation. They are legal tender for taxes."); *Peter v. Fisher*, No, 3:09-cv-394-N(BH), 2009 WL 1605358 (N.D. Tex) (June 8, 2009) ("Plaintiff's claim that the Federal Reserve cannot issue paper money is a 'hopeless and frivolous' claim soundly rejected by the Supreme Court 125 years ago." (citations omitted)). Because of the clear and longstanding principal that Federal Reserve notes are legal tender, federal reserve notes provided under a loan or credit agreement would be deemed valuable consideration. Therefore all contracts between Plaintiffs and Defendants (assuming that such contracts exist)[2] would not be void for lack of consideration. Plaintiffs received benefits from the agreements and would be obligated to pay their debts.

## 2. Disclosure of Social Security Numbers

Plaintiffs claim that Defendants violated 42 U.S.C. § 408(a)(8) because they use social security numbers on their contracts, disclose the numbers to credit reporting agencies and to

---

[2]Plaintiffs have not specifically described each individual contract with each Defendant, but have stated generally that "DEFENDANTS have, without good faith, unlawfully used, under color of commission, ambiguous and unlawful contracts to deprive plaintiffs of property and rights." Advanced Call Center through its attorney indicated during the Telephonic Case Management Conference that there was no debt instrument between it and Plaintiffs, and that they are merely debt collectors. Therefore, all arguments regarding the validity of the contracts would be irrelevant to this particular Defendant.

companies who buy the "original wet ink contracts," and compel the disclosure of social security numbers when entering into contracts. They argue that the contracts should be rescinded because they were made through the commission of a crime and further seek the arrest and prosecution of all agents involved. Defendants argue that Plaintiffs voluntarily disclosed their social security numbers, that § 408 does not create a private cause of action, that Plaintiffs have made no showing that Defendants used or disclosed their social security numbers in an illegal manner, and that Plaintiffs have no authority to bring criminal charges.

The criminal penalty statute provides that "whoever discloses, uses, or compels the disclosure of the social security number of any person in violation of the laws of the United States shall be guilty of a felony and upon conviction thereof shall be fined under Title 18 or imprisoned for not more than five years, or both." 42 U.S.C. § 408(a)(8). This statute is a criminal statute that imposes liability, for instance, when a person "discloses or uses the social security numbers for illegal activity." *See* 4 Soc. Sec. Law & Prac. § 59:15 (2010).

Defendant HSBC cites persuasive authority that this statute in particular does not create a private cause of action. *See O'Conor v. Frost National Bank*, 2009 WL 3248279 at *4 (Tex. App. 2009) ("[T]here is no private right of action under section 408(a)(8) of the Social Security Act." (citing *Alexander v. Wash. Gas Light Co.*, 481 F.Supp.2d 16, 33 (D.D.C. 2006) ("42 U.S.C. § 408(a)(8) ... does not provide a basis for a private civil cause of action."); *Edge v. Prof'l Claims Bureau, Inc.*, 64 F.Supp.2d 115, 118 (E.D.N.Y.1999) ("42 U.S.C. § 408(a)(8) ... is a criminal statute which provides for no civil remedies."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149 (1973) (holding that private citizens lack judicially cognizable interest in criminal prosecution of another)). [Doc. # 39 at 6]. It is unclear whether Plaintiffs are trying

7

to pursue a private cause of action under this statute. It is more likely that they are simply saying that Defendants violated a criminal statute in forming the contract, and as a result, the contract would be invalid.

Here, the only action alleged on the part of Defendants is "requiring" Plaintiffs to give their social security number on the application for the loan or credit. However, Defendants did not compel Plaintiffs to give their social security numbers; they had the option to not apply for the loan or credit. Therefore, if Plaintiffs did disclose their social security numbers on Defendants' applications, they did so freely and voluntarily. Nor is there any evidence that the Defendant lending institutions used Plaintiffs' social security numbers in an illegal manner after they entered into the contracts. In the absence of evidence the court cannot assume that Plaintiffs can prove illegal actions by Defendants.

Further, as noted by Defendant BMW Financial Services, Plaintiffs do not have standing or authority to bring criminal charges against Defendants, but rather, the discretion to bring charges for violation of a criminal statute lies with the prosecutor. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Batchelder*, 442 U.S. 114, 124 (1979). "A private citizen who wants criminal charges to be brought . . . must submit the complaint to the United States Attorney for review, since it is the United States Attorney who is responsible for prosecuting the complaint." *Lewis v. Jindal*, No. 09-405-JVP-SCR, 2009 WL 2849592 at *1 (M.D. La.) (Sept. 2, 2009) (citations omitted). Therefore, Plaintiffs have no standing to seek arrest and prosecution of agents in violation of the § 408 for illegal use and disclosure of their social security numbers.

Finally, Plaintiffs raise a new argument in its reply to U.S. Bank's Motion to Dismiss that

the banks operate as a monopoly by virtue of their membership in the Federal Reserve, *see* Pls.' Reply at 4 [Doc. # 17], and are therefore compelling commerce. Again, the Court is hard-pressed to see how any individual is compelled to seek out a financial institution and borrow money. Plaintiffs have not put forth any evidence dispelling that they entered into the contracts willingly and voluntarily and this new monopoly argument adds nothing to the Plaintiffs' unfounded claims.

### 3. Reservation of Rights

Plaintiffs next claim that they "are not subject to the law merchant because of reservation of rights. See UCC 1-308 also see USC TITLE 15 > CHAPTER 1 > § 17 'The labor of a human being is not a commodity or article of commerce.'" Compl. at 7, ¶ IV. Plaintiffs attached forms entitled "Notification of Reservation of Rights 1-308/ 1-207" for each Plaintiff dated October 6, 2009 for Mr. Hennis and October 13, 2009 for Mrs. Hennis. This claim fails because Plaintiffs have not alleged that these documents preceded the loan and credit agreements in question or what rights were reserved when they willingly entered into these agreements that were subsequently violated by Defendants.

### B. The Bills of Exchange as Fulfillment of Contractual Obligations

Plaintiffs assert that they submitted bills of exchange "with equal value for discharge of debt" as legal tender, and that, since Defendants refused to accept this bill of exchange as payment of the debts, the debts should be discharged. Plaintiffs have not provided copies of the alleged bills of exchange or a meaningful description of the documents. *See* Pls.' Resp. HSBC's

9

Mot. to Dismiss [Doc. # 56] (describing tendered document as "a promissory note 'bill of exchange' with equal value for discharge of debt"). In response, Plaintiffs assert that Defendants have the original bills of exchange because Plaintiffs sent them to the Defendants and further assert that "Defendants have already discounted the bills of exchange with the Federal Reserve and have received their funds" Pls.' Resp. to HSBC's Mot. at 8 [Doc. # 56].

From coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of "bills of exchange" have been dismissed as frivolous. *See Bryant v. Washington Mutual Bank*, 524 F. Supp. 2d 753, 760 (W.D. Va. 2007) (thoroughly discussing the "revisionist legal history and conspiracy theory" basis of claims that debtors may issue a bill of exchange requiring the United States to pay their debts to third parties out of secretly held trust accounts for each citizen and dismissing plaintiff's claims as "clearly nonsense in almost every detail"); *see also In re Marriage of Edwards,* 2008 WL 2854829 at **4 (Cal. App. 5 Dist. July 25, 2008) ("More important, tender of the documents, including the bill of exchange, was a sham and did not constitute merely a defective tender of payment; instead, 'it amounted to no tender at all.' (citing *McElroy, infra*). Respondent had no obligation to respond to the sham tender of payment, whether by specific objection or otherwise."); *Mould v. Saxon Mortg. Servs., Inc.*, 2005 WL 1950268 at *2 (W.D. Wash.) (Aug. 12, 2005) (dismissing claim that plaintiffs' debt was discharged by offering bill of exchange for failure to state a claim); *McElroy v. Chase Manhattan Mortg. Corp.*, 134 Cal. App.4th 388, 393 (Cal. App. 4 Dist. 2005) ("we unhesitatingly conclude the Bill is a worthless piece of paper, consisting of nothing more than a string of words that sound as though they belong in a legal document, but which, in reality, are

incomprehensible, signifying nothing.").³ In *Bryant*, the court recognized that not all bills of exchange are illegitimate by definition, but that plaintiff failed to show that the bills of exchange she sent as payment were valid. *See Bryan*t 524 F. Supp.2d at 758. Indeed the U.S. Treasury warns of bogus bills of exchange drawn on the U.S. Treasury noting that "all these Bills of Exchange drawn on the U.S. Treasury are worthless." *See* Bogus Sight Drafts/ Bills of Exchange Drawn on the Treasury,

http://www.treasurydirect.gov/instit/statreg/fraud/fraud_bogussightdraft.htm

(last visited May 5, 2010).

Without even pleading the monetary value of these "bills of exchange" Plaintiffs have not sufficiently pled that the presentation of these bills of exchange was performance in accordance with the terms of the contracts or that the documents proffered constituted valid bills of exchange. As HSBC states in their Rebuttal, "Plaintiffs have provided no basis for finding that Plaintiffs submitted any proper negotiable instrument in satisfaction of its obligations under any credit or loan agreement with HSBC." HSBC's Rebuttal at 5 [Doc. # 77]. The same holds true

---

³It is also worth noting that in 2008, Barton Buhtz, a proponent of redemption theory and the use of bills of exchange was sentenced to a prison term after being found guilty of conspiring to pass fictitious financial instruments in violation of 18 U.S.C. §§ 371 and 514(a)(2) and five counts, one reversed on appeal, of aiding and abetting the passing of fictitious financial instruments in violation of 18 U.S.C. §§ 2 and 514(a)(2). *See U.S. v. Buhtz*, 327 Fed. Appx. 742 (9th Cir. 2009) (affirming in part and reversing in part Buhtz's convictions in Oregon district court); Jury Verdict, *United States v. Buhtz*, No. 1:05-CR-30047 (D.Or. Oct. 5, 2007); *see also* Press Release, United States Attorney's Office District of Oregon, Sunland, California Man Sentenced in Southern Oregon in Counterfeit Treasuries Case (Feb. 12, 2008), *available at* http://www.justice.gov/usao/or/PressReleases/2008/20080212_Buhtz.html (quoting IRS Criminal Investigator as saying that "'passing of fake checks in order to pay taxes and purchase material goods is not only ridiculous, it's criminal . . .").

for all Defendants.[4]  Plaintiffs' argument that under the UCC § 3-603 the Defendants' refusal of the bills of exchange is grounds for discharging the debt must fail if the tendered bills of exchange were not valid.  Having failed to establish the existence and validity of the alleged bills of exchange, Plaintiffs' claims that the bills of exchange discharged their debts must fail.

### C.  Collection Practices and Validation of Debt

Plaintiffs also cite the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g and allege failure to validate the debts owed and harassment and intimidation by way of unrelenting phone calls.  § 1692g requires debt collectors to provide certain information to the debtor within five days of initial contact, including the amount of debt, the current creditor, and a statement that alerts the debtor to a presumption of validity of the debt if not challenged.  15 U.S.C. § 1692g(a)(1-3).  Further, the section requires that upon request of the debtor within thirty days of initial contact, the debt collector must request a validation of the debt from the creditor and submit a copy to the debtor if the consumer disputes the debt.  15 U.S.C. § 1692g(a)(4).  All defendants but Advanced Call Center argue that this claim must be dismissed because they are not "debt collectors" as defined by the statute, but are "creditors."  FDCPA defines "debt collectors" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, *debts owed or due or asserted to be owed or due another.*"  15 U.S.C. §1692a(6) (emphasis added).  "The term does not include–

---

[4]Again, Plaintiffs and Advanced Call Center did not have a contract of any kind.  It is unclear from the pleadings if Plaintiffs attempted to pay them as a debt collector with a bill of exchange.  Even assuming they did, this claim must fail against Advanced Call Center.

any officer or employee of a creditor, while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A). "A debt collector does not include the consumer's creditors." *Robertson v. GE Consumer Fin., Inc.*, 2008 WL 4868289 at *3 (S.D. Miss. 2008) (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)); *see also Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007) ("Mortgage companies collecting debts are not 'debt collectors.'").

In Plaintiffs' Complaint, the Hennises allege that they have contracts with Defendants by virtue of their allegations that such contracts should be discharged. As they claim to have contracts directly with the Defendants, it appears clear that Defendants, as creditors, would not be subject to the requirements of the FDCPA. For these particular Defendants, any claim of FDCPA violation should be dismissed.

The only defendant that is arguably subject to liability under the FDCPA is Advanced Call Center.[5] Plaintiffs allege in their complaint that "Plaintiffs have sent additional letters by certified mail return receipt to DEFENDANTS asking them to validate alleged 'debts.'" Compl. 9, ¶ 10 [Doc. # 1]. However, Advanced Call Center notes in its memorandum in support of its unopposed motion to dismiss that Plaintiffs have not alleged that it is a debt collector under the statutory definition, or that Plaintiffs requested validation of debt *within thirty days of initial contact* which would trigger the Advanced Call Center's obligation under the statute. [Doc. # 52]. They also point out that Plaintiffs have not argued that the amounts due were incorrect so that validation of debt would have been unnecessary. While this is a rather broad statement of

---

[5]Advanced Call Center through counsel identified itself as a debt collector without a debt instrument during the Telephonic Case Management Conference on April 14, 2010.

fact by the Plaintiffs, the court is not tasked with weighing evidence at this stage. Advanced Call Center has not shown beyond doubt that Plaintiffs can prove no set of facts to support their FDCPA claim which would entitle him to relief. Therefore, the FDCPA claim for failure to validate the debt against Advanced Call Center survives this motion to dismiss.

In passing, Plaintiffs allege that Defendants have made harassing collection calls and ignored all their correspondence. Again, Plaintiffs fail to describe specific conduct of Defendants. Without any factual allegations, Plaintiffs' claims are the type of "unadorned, the-defendant-unlawfully-harmed-me accusation" described in *Twombly* and *Iqbal*. In fact, as addressed earlier, Defendants were well within their rights to ignore the submission of sham documents like the bills of exchange. *See In re Marriage of Edwards*, *supra*. Without alleging the law violated, or the actions that violated the law, Plaintiffs have failed to state a claim for which relief may be granted.

## IV. CONCLUSION

Even accepting Plaintiffs' allegations as true and viewing them in the light most favorable to Plaintiffs, the Complaint in this case fails to state a claim for relief that is plausible on its face. The claims based on the redemption theory and lack of consideration are contrary to clearly established law. Likewise, the claims brought under the Social Security Act fail as a matter of law. Finally, the pleadings lack a factual basis to demonstrate even the applicability of the FDCPA for all Defendants with the exception of Advanced Call Center, and lack a factual basis for Defendants' violations of the statute.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Motions to Dismiss [Docs.

# 6, 38, 42, 44, 49, 57, 68, & 70] are **granted**. Advanced Call Center Technologies, LLC's Motion to Dismiss [Doc. # 51] is **granted in part and denied in part**.

IT IS FURTHERMORE ORDERED that all claims against the following parties be **dismissed with prejudice:**

1) US Bank, NA, and U.S. Bankcorp Manifest Funding Services;

2) HSBC Bank Nevada, N.A.;

3) GE Money Bank;

4) Belk;

5) Advanta Bank Corp.;

6) Regions Bank;

7) BMW Financial Services NA, BMW Bank of North America, BMW Card Services, a/k/a BMW Bank of North America, and Financial Services Remarketing, Inc. (collectively "BMW"); and

8) Discover Bank and DFS Services LLC, incorrectly sued as "Discover Card Services"

IT IS FURTHERMORE ORDERED that all claims against Advanced Call Center Technologies, LLC, be **dismissed with prejudice** with the exception of the claim under the FDCPA for failure to validate debt. A separate judgment will follow.

IT IS FURTHERMORE ORDERED that Plaintiffs' Petition for Restraining Order [Doc. # 27] against BMW and Regions Bank is denied as moot because Plaintiffs have failed to establish that they have a viable underlying legal claim against either of these Defendants.

SO ORDERED AND ADJUDGED on this, the 10th day of May, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE